A. LYSA SIMON, SBN 94884
LAW OFFICES OF A. LYSA SIMON
9846 White Oak Avenue
Suite 205
Northridge, CA 91325
(818) 701-5200

Attorney for Plaintiff
FARMERS INSURANCE GROUP
FEDERAL CREDIT UNION

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| In re<br><br>RUBEN ALCARAZ JR.<br>aka RUBEN ALCARAZ<br>SSN/ID: xxx-xx-4883<br><br>Debtor.<br><br>FARMERS INSURANCE GROUP CREDIT UNION<br>Plaintiff,<br><br>vs.<br><br>RUBEN ALCARAZ JR.<br>aka RUBEN ALCARAZ<br>Defendant. | CASE NO. 15-08187-LA7<br><br>CHAPTER 7<br><br>ADV. NO. 16-90111 LA<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT UNDER 523<br><br>**Hearing Scheduled For:**<br>Date: June 8, 2017<br>Time: 11:00 a.m.<br>Courtroom: Department 3 (Rm 129) |

COMES NOW Plaintiff, Farmers Insurance Group Federal Credit Union (hereafter the "Credit Union") and submits its Points and Authorities in support of the Credit Union's motion to enter a default judgment against the Defendant under 523(a)(2)(A) and (B).

**I. BACKGROUND**

The Credit Union filed a motion for leave to take the Defendant's 2004 Examination. The Court Order required the Defendant to appear and produce a number of documents. The Exhibit Index filed concurrently herewith notes not only the exhibit

number of Exhibits attached to it, but also references their exhibit numbers as they pertain to the Defendant's 2004 Examination.

The Defendant, Ruben Alcaraz Jr. aka Ruben Alcaraz (hereafter the "Defendant") was a Farmers Insurance Group of Companies agent. As a result of his being an agent for Farmers Insurance Group of Companies (hereafter the "Insurance Companies"), he fell within the field of membership for the Credit Union.

The Credit Union is a separate entity from the Insurance Companies. The Credit Union derives its name from the fact that its primary field of membership are the agents, district managers, employees, and the family members of the Insurance Companies. The Credit Union also has a few other small employee groups within its field of membership.

The Credit Union is a not-for-profit cooperative corporation duly organized and existing under the laws of the United States of America. It is a federally chartered Credit Union.

The Defendant had four (4) outstanding loans with the Credit Union in 2014. One (1) of the loans was co-signed by his now ex-wife. The Credit Union obtained a Judgment in the San Diego County Superior Court on November 9, 2015, in the sum of $74,520.61. The Credit Union is asking the Court to find the loans upon which the Judgment was based to be non-dischargeable. The Judgment is Exhibit "1", annexed to the Exhibit Index filed concurrently herewith, and incorporated herein by this reference. (All of the exhibits referenced in this Memorandum of Points and Authorities are annexed to the Exhibit Index filed concurrently herewith for the Court's convenience and are incorporated herein by this reference.)

The Judgment was based upon the four (4) following subaccounts.

a. **Sub-account xxx30-L40.2** (granted **on September 20, 2012,** Vehicle Secured Loan).

b. **Sub-account xxx30-L75** (granted **on June 6, 2013,** VISA).

///

    **c.**    **Sub-account xxx30-L82 (**granted **on January 13, 2014,** Home Equity Line of Credit referred to as a "HELOC").

    **d.**    **Sub-account XXX30-L1 (**granted **on January 6, 2014,** signature loan).

The Defendant obtained a number of loans from the Credit Union as early as March 23, 2012. Many of the loans were either paid off directly or were refinanced by later loans. The Defendant, on his numerous loans, misrepresented material matters on written applications to the Credit Union, as well as other documentation he provided to the Credit Union, including Personal Financial Statements.

The first misrepresentation began on March 23, 2012 loan. The Defendant misled the Credit Union on the 2012 Personal Financial Statement, he provided to the Credit Union and caused the Credit Union to believe that as of March 23, 2012 (prior to the 2011 taxes being due), he only had outstanding the sum of $20,419.00 in unpaid taxes for 2011. (Said Personal Financial Statement is Exhibit "5".) Specifically, the Defendant typed in:

"Federal Taxes for 2011 - $18,470.00 / State Taxes for 2011 - $1,949.00."

The typed information on Exhibit "5" was provided to the Credit Union by the Defendant. As stated in the Declaration of Ramil Aguilar, the Credit Union made available to its members its loan application forms on the internet and gave its members the forms to complete by hand or typewriter.

We now know from the numerous documents the Defendant produced at his 2004 Examination that as of January 2012, the Defendant knew that he was past due for his federal income taxes for tax years 2009 and 2010, in the sum of $22,648.62. This is in addition to the sum of $18,764.00, the Defendant indicated he owed on the Defendant's 2011 federal income tax return that he produced at his 2004 Examination. Defendant also owed an additional $2,129.00 for his 2011 California State Income Taxes. We now know that as of March 2012, the Defendant actually owed in back and current taxes the sum of $43,541.62. The Declaration of Ramil Aguilar makes it very clear that had the Credit Union known, as of March 2012, that the Defendant owed so much in past due

income taxes, he would not have qualified for any of the loans that he was granted by the Credit Union, including the four (4) loans which remained outstanding at the time the Credit Union took its judgment against Defendant in State Court. It is those outstanding loans that were reduced to a state court judgment that the Credit Union now seeks to have declared non-dischargeable.

It is worth nothing, as of March 9, 2012, the Defendant's personal income taxes for 2011 were not yet past due. The Defendant had until April 16, 2012 to pay them. The Defendant also knew that his tax situation was becoming worse and worse because he was only paying his past due taxes each year and was not paying any of his estimated taxes. As a result, the amount of past due taxes the Defendant owed each year was increasing.

The Defendant also misrepresented his income on the written credit applications and personal financial statements he gave the Credit Union between 2012 and 2014. The Defendant's misrepresentations as to income started with the March 2012 Personal Financial Statement, which he gave to the Credit Union. On said Personal Financial Statement (Exhibit "5"), the Defendant stated his income was the sum of $11,500.00 per month, from salary/commissions and the sum of $3,000.00 per month, from other income. In actuality the Defendant's total income according to his 2012 tax return (Exhibit "7") for the entire year was only the sum of $90,742.00. Said sum divided by twelve (12) is only $7,561.83 per month.

When comparing the Defendant's loan applications to his tax returns, Profit and Loss Statements, and the other documents the Defendant produced at his 2004 Examination, we now know that the Defendant was making substantially less than he represented to the Credit Union, and that he also knew it. Worth noting is that the Defendant testified he had easy access to Profit and Loss Statements, and therefore his actual income. Specially, he testified all that he had to do was walk next door to his accountant's office to ask for a Profit and Loss Statement. He admitted doing so on many occasions.

It is also clear from the Defendant's testimony during his 2004 Examination that he understood the difference between his business' gross receipts, i.e., the commissions paid to his business and his personal net profits, which was his income after deductions for all expenses incurred by his business.

The third point of Defendant's material misrepresentations was the Defendant's false representations to the Credit Union that he was still a Farmers Insurance Companies Agent, with continuing income from the sale of Farmers Insurance Policies, on the last two (2) loans he obtained from the Credit Union. The Defendant applied for said loans after he has already sold his agency and was no longer selling insurance for Farmers Insurance Companies. The Defendant knew that his income was changing and that he had been paid the bulk of the sales price of his business as of December 2013, when he obtained his final two (2) loans in January of 2014, from the Credit Union.

For these reasons, had the Credit Union known the truth of the material facts, the Credit Union would not have granted Defendant any loans. The risk was simply too great.

## II. PROCEDURAL HISTORY OF THE BANKRUPTCY

Defendant filed his Bankruptcy on December 30, 2015. The parties entered into a Stipulation to Extend Time to File Complaint. The Credit Union filed an Adversary Complaint under both 11 U.S.C. Sections 523 and 727, on June 27, 2016. The last day to file a Complaint by Stipulation and a Court Order, at that time was June 30, 2016.

The Credit Union now seeks a Judgment under 11 U.S.C. Section 523(a)(2)(A) and/or (B). If the Court enters a Judgment pursuant to Section 523, it is the intention of the Credit Union to file a Motion to Abandon the 727 Cause of Action.

## III. THE DEFENDANT IS NOT ENTITLED TO A DISCHARGE UNDER 11 U.S.C. SECTION 523(A)(2)(A) OR (B)

11 U.S.C. Section 523(a)(2)(A) of the Bankruptcy Code excludes from discharge debts that are the result of "false pretenses, false representation, or actual fraud," other than a statement respecting the debtor's financial condition. To prevail under §523(a)(2)(A), a plaintiff must prove that:

"(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;

(2) knowledge of the falsity or deceptiveness of his statement or conduct;

(3) an intent to deceive;

(4) justifiable reliance by the creditor on the debtor's statement or conduct, and

(5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Association v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)(citations omitted); *accord, Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010). A creditor bears the burden of proving the applicability of 11 U.S.C. §523(a)(12)(A) by a preponderance of the evidence. *Id.*"

Section 523(a)(2)(B) of the Bankruptcy Code excepts debts from discharge to the extent they were incurred through "use of a statement in writing--(I) that is materially false: (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (Iv) that the debtor caused to be made or published with intent to deceive" to obtain money, services, or the extension of credit. 11 U.S.C. §523(a)(2)(B).

The phrase "statement respecting the debtor's or an insider's financial condition" is construed narrowly. *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 577-578 (9th Cir. BAP 2011). In the context of 11 U.S.C §523(a), such statements are limited to "those that purport to present a picture of the debtor's [or insider's] overall financial health." Such statements contain information similar to that found in balance sheets or income and loss statements, although need not be formal financial statements. Id. at 578.

In the case at hand, the Defendant on various multiple documents fraudulently omitted the following facts:

///

1. The Defendant fraudulently suppressed and hid material facts when he failed to disclose and misrepresented the amounts he owed for past due federal and states taxes.

2. The Defendant fraudulently misrepresented his income by consistently stating in writing on loan applications and personal financial statements that it was for amounts which he knew were much higher than his actual income. The fact that he was able to tell the Internal Revenue Service how much his actual income was (Exhibit "54"), on the IRS Installment Agreement and Collection Information document, which the Defendant completed by hand on or about August 8, 2012, indicates that the Defendant was fully aware of how much his actual income was. Moreover, the Defendant admitted he could walk to his accountant's office, which was next to his office, to ask for a profit and loss statement, without incurring a charge, at any time, shows the availability of that information to Defendant. Further, the fact the Defendant demonstrated that he understood the difference between gross receipts and his actual income is significant.

3. In January of 2014, on the Defendant's last two (2) loans with the Credit Union, the Defendant false claimed that he was still a Farmers Insurance Agent, **AFTER** he was no longer selling Farmers Insurance for the Insurance Companies and had already sold his Farmers Insurance Company Agency to another broker.

4. On the Defendant's January 2, 2014 loan application, the Defendant falsely checked that he did not know of any reason why there would be an interruption in his income.

Clearly, the Credit Union has met all of the elements under 523(a)(2)(A). Specifically, the above items were either outright misrepresentations or fraudulent omissions.

///

The Defendant knew the falsity and deceptiveness of his conduct. We know this because the Defendant submitted altered/counterfeit documents for his 2004 Examination, in an effort to try to make it appear that the Credit Union was previously on notice of facts closer to his actual situation. Specifically the Defendant submitted for his 2004 Examination a Personal Financial Statement, dated December 11, 2012 (Exhibit "2"), which had never been given to the Credit Union. It has a notation on it about taxes which by that time would have been past due.

The Defendant also produced for his 2004 Examination a separate Personal Financial Statement, dated January 2, 2014 (Exhibit "3"), which he altered by putting additional information on it, disclosing that he knew he owed back taxes. Said additional information about the Defendant's past due taxes was not on the Personal Financial Statement, dated January 2, 2014 (Exhibit "4"), which Defendant actually provided to the Credit Union in January of 2014.

Similarly, the Defendant in March of 2012, gave the Credit Union one version of a 2011 Tax Return (Exhibit "60") but provided the Credit Union's attorney a different version of the 2011 Tax Return (Exhibit "8") for his 2004 Examination.

**Obviously, the Defendant's intentions were to mislead and deceive the Credit Union. Otherwise, he would not have been trying to cover his tracks by submitting altered and/or fabricated documents at his 2004 Examination.**

Not only did the Credit Union justifiably rely upon the information provided by Defendant, as will be discussed below, but the Credit Union also reasonably relied upon said information.

The Credit Union asked the Defendant for information as to his outstanding debt in writing. The Defendant misrepresented the information he provided to the Credit Union in writing. The Credit Union also asked for the Defendant's 2011 Tax Return. The Credit Union was given a version of said tax return. There was no way for the Credit Union to know that the version of the 2011 Tax Return provided to it by the Defendant had been altered. Between 2012 and 2014, when the Credit Union was making the loans to the

Defendant that are still outstanding, there was no way for the Credit Union to know the Defendant owed past due taxes for 2009 and 2010, upon which he was making payments. Similarly, there was no way for the Credit Union to know that the Defendant's tax debt was increasing as each year passed.

The Credit Union also relied upon the Defendant's statement as to his income, in that the Credit Union was given it in writing and was provided tax returns for prior years. An individual's income can increase during a current year and be more than in prior years. Clearly, the Credit Union both justifiably and reasonably relied upon the information provided by the Defendant, with regard to his income.

Finally, the Credit Union reasonably relied upon the Defendant's written representation that he was still an agent for the Insurance Companies. The fact was the Credit Union had known the Defendant as an agent for the Insurance Companies. The fact Defendant continued to represent himself to the Credit Union to be an agent for the Insurance Companies, even after he sold his agency, was deceptive.

Clearly, the Credit Union has met all of the elements of Section 523(a)(2)(A).

If for any reason the Court disagrees with the narrow construction referenced in the *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 577-578 (9th Cir. BAP 2011), then the Credit Union submits it has shown as well, the Credit Union met all the burden to comply with elements of Section 523(a)(2)(B). Specifically, the misrepresentations as to income and taxes were in writing. They were material. They falsely indicated the Defendant's financial condition, upon which the Credit Union reasonably relied upon and for which the Defendant became liable for extensions of money and credit, which the Defendant caused to be made and/or published with the intent to deceive.

The bottom line is that had the Defendant not misrepresented his situation with the Internal Revenue Service, which he did in writing, the Credit Union would never have extended to him any loans, until and unless he would have shown the Credit Union that he had taken care of his tax problem.

///

Similarly, had the Defendant not overstated his income, the Credit Union would not have granted the Defendant any loans.

Finally, with regard to the last two (2) loans obtained in January of 2014, after Defendant had sold his business (I.e., his insurance agency) and did not have any realistic prospects of income, the Credit Union would not have granted those loans to the Defendant.

## IV. CONCLUSION

For the reasons stated above, it is submitted that the Judgment entered against the Defendant in the State Court action known as *Farmers Insurance Group Federal Credit Union vs. Ruben Alcaraz, etc., et al.,* San Diego County Superior Court Case Number 37-2015-00005875-CU-CL-CTL, should be held to be non-dischargeable in Defendant's bankruptcy.

Dated: April 27, 2017

/s/ A Lysa Simon
A. LYSA SIMON
Attorneys for Plaintiff,
Farmers Insurance Group Federal Credit Union